Winchester *v.* Osborn.

———•••———

## WINCHESTER *vs.* OSBORN AND MORSE.

In an action to recover damages for obstructing a stream, and setting the water back upon the plaintiff's machinery, in a mill above, by throwing tan bark from the defendants' tannery into the stream, the defendants justified under a grant from the plaintiff, which contained the following clause : " Together with the privilege of digging a channel as wide and as deep as the present channel now is, along and adjoining the sixth course above mentioned   *   *   and turning the water from the mill-race therein, together with the right to tap the [grantor's] mill pond at, &c., and drawing therefrom water enough " in addition to other uses specified, for " *carrying away the spent bark,*" &c.

*Held* that the true and only proper construction of this grant gave to the defendants the right to discharge all the spent bark of the tannery into the stream of water to be drawn from the plaintiff's mill pond, and have it re-

Winchester *v.* Osborn.

moved by that means from the premises, and carried into the tail-race, and into the channel of the creek into which the tail-race emptied.

*Held also,* that it was clearly the intention of the parties that the grantees should have the right to carry away the spent tan bark in the way in which the stream so used would naturally or necessarily flow—through the channel in which it found its way into the creek below.

But that if the intention was not entirely clear, upon the face of the instrument, the court had the right, for the purpose of ascertaining the intention, to consider the object of the grant, the situation of the premises, and the surrounding circumstances at the time the grant was made.

It is a primary and fundamental rule, that where a thing is granted, all the means to attain it, and *all the fruits and effects of it,* are granted, also, and should pass, inclusive, together with the thing itself, without the words *cum pertinentis,* or any similar words. The incident passes by the grant of the principal thing.

Thus where there was a grant of lands for the purpose of having a tannery erected thereon, and the business of tanning hides and making leather there carried on; and coupled with this, and as a part of the same instrument, was a grant of the right to draw water from the grantor's mill pond, near by, to use in the business, on the premises granted, enough in addition to the other uses specified, for " carrying off the spent bark;" *Held* that this was clearly a grant of the right, as against the grantor, to produce whatever effect or consequence might naturally or necessarily result from the use of the right so granted.

*Held, also,* that even if the right so conferred by the deed could be regarded as no more than a *license,* to carry away the spent bark in that manner, the result would be the same, because, being coupled with a grant, and a material part of the right granted, it would be irrevocable; and no action would lie for any of the consequences flowing from the exercise of the license in the manner contemplated when it was given. The resulting injury, in that case, would be *damnum absque injuria.*

*Held, further,* that the right to float off the spent tan bark from the grantees' tannery, into the creek, was a substantial part of the grant.

THIS action was brought to recover damages sustained by the plaintiff, by reason of the defendants discharging and throwing tan bark from their tannery on to the plaintiff's land and into Fish creek, thereby obstructing the race and creek, and setting the water back on the water wheels in the plaintiff's saw mill, upon said creek, above.

On the trial, at the Oneida circuit, the jury found a verdict for the defendants. Various exceptions were taken,

on the trial, and a case made; upon which the plaintiff moved for a new trial.

*F. Kernan*, for the plaintiff.

*John F. Seymour*, for the defendants.

*By the Court*, JOHNSON, J.   The action was brought to recover damages caused by the acts of the defendants, in throwing or discharging tan bark, after it had been used in their tannery, into the waters of Fish creek, thereby filling up the channel of said creek, and obstructing the flow of water therein, by means of which the waters of said creek were set back upon the mills and machinery of the plaintiff, obstructing and impeding the operation thereof, to his injury.   The defendants, among other defences, justified the acts complained of under a grant from the plaintiff, which, as they insist, grants and conveys to them the right to discharge their spent bark into the waters of the creek, in the manner and to the extent to which it has been done by them.   This is the main question in the case.   It appears from the evidence in the case, without dispute, that the bark which the defendants have discharged into the stream was spent bark, only. This is bark after it has been leached and the tannin thus extracted from it.   The defendants derive their title from the plaintiff through Henry Hawver.   Prior to July 6, 1855, the defendants' premises were part of a larger tract or parcel of land owned by the plaintiff, on which he had a saw mill, operated by the waters of Fish creek, supplied from a pond above the mill.   On the day aforesaid, the plaintiff granted and conveyed the premises now owned by the defendants, consisting of a little over two acres of land, to said Hawver for the purpose of having a tannery erected thereon, and the business of tanning leather from hides there carried on.

On the same day of the grant, and cotemporaneous therewith, the plaintiff took a bond from said Hawver, obligating him to commence immediately, and build as soon as practicable, a tannery on the lands so conveyed, at least 180 feet in length, and not less than 42 feet wide, and commence the tanning of leather therein, and continue it as long as he should deem it profitable. The premises so conveyed were situated below the plaintiff's saw mill, and embraced the entire tail-race of the saw mill for a considerable distance between the saw mill and the point where the tail-race entered the creek, a few rods only below. The plaintiff's deed to Hawver, after describing the premises conveyed, contains the following grant: " Together with the privilege of digging a channel as wide and as deep as the present channel now is, along and adjoining the sixth course above mentioned, (that is,) from the large elm tree to a clump of maple trees, and turning the water from the mill-race therein, together with the right to tap said Winchester's mill pond at a place opposite the dwelling house on the land aforesaid, and drawing therefrom water enough to supply a steam engine for the use of a tannery, and also for soaking hides, wetting leather, for pumping on the leaches, and carrying away the spent bark, and, in high water, the right to draw from the pond aforesaid water for the use of other machinery, but not in such quantities, at such time, as will lower the water in the pond so that it will not run over the dam two inches deep." I cannot doubt that the true and only proper construction of this grant gives to the defendants the right to discharge all the spent bark of the tannery into the stream of water to be drawn from the plaintiff's mill pond, and have it removed by that means from the premises, and carried into the tail-race, and into the channel of the creek, into which the tail-race emptied, close at hand.

Winchester *v.* Osborn.

That such was the intention of the parties seems to me to be beyond doubt. The grantee had the right to tap the mill pond and to draw therefrom "water enough," in addition to other uses specified, for "carrying away the spent bark." This must mean carrying it away, by means of the stream of water, and in the way in which the stream so used would naturally or necessarily flow; through the channel in which it found its way into the creek below. This intention appears extremely plain upon the face of the grant. But if it should be considered that the intention was not entirely clear upon the face of the instrument, we have the right, for the purpose of ascertaining the intention, to consider the object of the grant, the situation of the premises, and the surrounding circumstances at the time the grant was made. (*French* v. *Carhart,* 1 *N. Y.* 96.) Upon referring to the testimony it will be seen that the premises granted were so situated that the water to be drawn from the plaintiff's mill pond, to be used at the tannery for any purpose, must, of necessity, find its way into Fish creek, only a few rods below, and could go nowhere else. Whatever was to be carried away by the water must be carried there. "Carrying away" by water, is a very common expression, and one which is generally well understood; and in construing a grant the language must be taken according to its general and common signification, unless it is qualified by some subsequent words which indicate a contrary or different intention. Here what follows not only does not limit or qualify the expression, but serves to carry out and express more clearly the general intention. It provides for the use, by the grantee, of the water from the mill pond in much larger quantities, and for other purposes in times of high water. And in this connection, also, and for the purpose of arriving at the true meaning and intention, we should look at the bond taken back by the grantor, and which

was a part of the consideration of the conveyance. The term, spent bark, appears to have been well understood by the grantor, from his own testimony. Looking at all these circumstances and surroundings, in connection with the bond and the language of the grant, the intention and expectation are rendered, as it seems to me, too clear for dispute or doubt, that this spent bark was to be floated off by the water towards, and into, Fish creek. This being the case, the plaintiff has not, and never had, any cause of action by reason of the bark, thus discharged, lodging in the mill-race, or the creek, and obstructing the flow of water, and thus causing it to obstruct the operation of the wheels and machinery of his saw mill. It is a primary and fundamental rule, that " when a thing is granted, all the means to attain it, *and all the fruits and effects of it,* are granted also, and shall pass, inclusive, together with the thing, by the grant of the thing itself, without the words *cum pertinentis,* or any such like words. (*Shep. Touch.* 89.) The incident passes by the grant of the principal thing. (*Co. Lit.* 152. *Bac. Ab. Grant I.*) Here is a grant of certain lands for the purpose of having a tannery erected thereon, and the business of tanning hides and making leather there carried on, to any extent; and coupled with this, and as a part of the same instrument, is the grant of the right to draw water from the plaintiff's mill pond near by, to use in the business on the premises so granted, enough, in addition to the other uses specified, for " carrying off the spent bark."

This is clearly a grant of the right, as against the grantor, to produce whatever effect or consequence might naturally or necessarily result from the use of the right so granted. Even if the right so conferred by the deed could be regarded as no more than a license to carry away the spent bark in that manner, the result would be the same, because, being coupled with a grant, and a material

part of the right granted, it would be irrevocable, and no action would lie for any of the consequences flowing from the exercise of the license in the manner contemplated when it was given. The resulting injury, in that case, would be *damnum absque injuria.* · But, in my judgment, this right was a substantial part of the grant, and I think the learned justice should have so held and ruled at the circuit. In this view, all the rulings excepted to in the course of the trial, and the exceptions to the charge, are of no consequence. They all, with perhaps one or two exceptions, grew out of an erroneous ruling against the defendants, and in the plaintiff's favor. If it were true, as seems to have been assumed upon the trial, that the terms of the grant, under which the right in question was claimed, were ambiguous, then I think his rulings and his charge were correct, as against the plaintiff.

From the observations of the learned judge, in his charge, he seems to have been strongly inclined to the view of the grant which I have taken, and to have adopted the other view for the purpose of more fully presenting the questions involved, on a review. Should we determine the rights of the parties upon the import of the grant drawn from its terms, as I think we safely may, it disposes effectually of the cause of action, independent entirely of the extraneous evidence respecting the plaintiff's knowledge of what rights his grantée was acquiring from others, or of what he saw done, or assisted his grantee in doing, by way of bringing water to the tannery and providing for its outlet, and renders all that part of the case immaterial. The evidence offered by the plaintiff, in respect to his want of knowledge or information, that spent bark was to be discharged from the leaches, or that he supposed nothing but rinsing them in the water was to be allowed, was properly excluded, as was also his testimony as to what he had heard in regard to the contents of the

paper his grantee was obtaining, or had obtained from others.

[FOURTH DEPARTMENT, GENERAL TERM, at Oswego, May 7, 1872. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.