RUSSEL WINCHESTER, Appellant, *v.* HENRY R. OSBORNE et al.,
Respondents.

The intent of a grantee as to his future action in the use of the granted
premises, whether the same be secret, or expressed and known to the
grantor at the time of the conveyance, cannot, in any way, affect the
rights of the parties under the grant, or enlarge its terms.

Plaintiff owned certain premises, upon which were a saw-mill and dam.
He conveyed to H. a portion of the premises below the dam for the
purpose of having a tannery erected thereon. By the deed H. was
granted the right to take water from the pond for various purposes, and,
among others, for " carrying away the spent bark." Plaintiff retained
lands below that so deeded. *Held*, that the deed did not authorize H.,
or his successors in title, to discharge the spent bark into the stream so
that it would lodge therein upon plaintiff's premises, or obstruct the flow
of water and set it back upon plaintiff's wheel.

*Winchester* v. *Osborne et al.* (62 Barb., 337) reversed.

(Argued September 25, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, affirming a judgment
in favor of defendants entered upon a verdict. (Reported
below, 62 Barb., 337.)

This was an action to recover damages alleged to have been
caused by defendants' discharging tan-bark from their tannery
so that it lodged upon plaintiff's premises.

It appeared that, in 1855, plaintiff owned certain premises
in Camden, Oneida county, upon which was a saw-mill and a
mill-pond, formed by the waters of Fish creek, which ran

through the premises. For the purpose of inducing one Henry Hawver to erect a tannery plaintiff conveyed to him, for a nominal consideration, a portion of said premises below his saw-mill, taking back a bond by which Hawver obligated himself to erect a tannery thereon. The deed to Hawver included the land through which passed a portion of the tail-race from plaintiff's mill. The deed to Hawver contained this in the granting clause: "Together with the right to tap Winchester's (plaintiff's) mill-pond at a place opposite the dwelling-house on the land aforesaid and drawing therefrom water enough to supply a steam-engine for the use of a tannery, and also for soaking hides, wetting leather, for pumping on the leaches and carrying away the spent bark; and in high water the right to draw from the pond aforesaid water for the use of other machinery, but in such quantities, at such times, as will lower the water in the pond so that it will not run over the dam at least two inches deep."

Plaintiff's land extended down the creek below that conveyed to Hawver. Hawver erected the tannery as agreed. Defendants came into possession of the tannery property in 1859, and have since operated it.

The evidence tended to show that defendants for a time discharged the spent bark through a spout upon their own land, but afterward discharged it into the tail-race of the saw-mill. It lodged there and in the creek below, obstructing the flow of water and setting it back upon the wheel of plaintiff's mill. Defendants gave evidence tending to show that prior to, or about the time of the conveyance to Hawver, the latter obtained from the owners of land on Fish creek, below plaintiff's land, the right to discharge all tan-bark from the tannery into the creek, and a release of all damages resulting therefrom, and that this was with plaintiff's knowledge; and the court charged the jury, that if they found that plaintiff had no notice before he executed the deed that it was Hawver's intention to discharge any portion of his bark into the stream and have it run off on to the land below and lodge wherever it might chance, they must find a verdict for plaintiff; but if

they found as a fact that he was aware, before he executed the deed, that it was intended to cast the spent bark into the stream, then plaintiff could not recover. Under these directions, to which plaintiff's counsel duly excepted, the jury rendered a verdict for defendants. The General Term, upon appeal, without regarding the exceptions, affirmed the judgment, upon the ground that by Hawver's deed he and his successors in title acquired a right to do the acts complained of.

Further facts appear in the opinion.

*Francis Kernan* for the appellant. Defendants had no right to fill up the mill-race where it passed over the land conveyed to them and obstruct the flow of water from plaintiff's mill, except by digging a new channel. (*Lampman v. Milks*, 21 N. Y., 505–508.)

*John F. Seymour* for the respondents. Plaintiff having had notice that defendants intended to have the spent bark go into the stream, the latter were not liable. (*Rood v. N. Y. and E. R. R. Co.*, 18 Barb., 80; 16 J. R., 172; C. & H. Notes, 1402–1409; *Walter v. Post*, 6 Duer, 363; *Le Fevre v. Le Fevre*, 4 S. & R., 241; *Short v. Taylor*, 2 Eq. Cas. Abrid., 522; Wash. on Easements, 316, chap. 3, §§ 4, 22–25.)

REYNOLDS, C. It is not questioned but that, prior to the year 1855, the plaintiff was the owner of all the premises and the water privileges in which either of the parties claim any present interest. He had a dam and a saw-mill as early as 1850, in the same location as at the time of the conveyance to the defendants' predecessors, in title; and, with the exception of the actual discharge of waters from the sawmill, the same remains unchanged in all material respects. In 1855, it appears that the plaintiff desired to have a tannery erected on his premises, and, to achieve that purpose, conveyed to one Hawver certain of his property and water rights,

and took from him an obligation that a tannery should be erected, and this, in fact, was done. The deed of the plaintiff to Hawver, in 1855, after conveying the land described in it, also gave Hawver "the privilege of digging a channel as wide and as deep as the present channel now is, and adjoining the sixth course above mentioned; that is, from the large 'elm tree' to a clump of maple trees, and turning the waters from the mill-race therein, together with the right to tap said Winchester's mill-pond at a place opposite the dwelling-house on the land aforesaid, and drawing therefrom water enough to supply a steam engine for the use of a tannery, and also for soaking hides, wetting leather, for pumping on the leaches, and carrying away the spent bark; and, in high water, the right to draw from the pond aforesaid water for the use of the other machinery, but not in such quantities, at such time, as will lower the water in the pond so that it will not run over the dam two inches deep." The consideration of the deed from which the above extract is made was merely nominal, and it cannot very well be assumed that it was the plaintiff's intent that the property and privileges granted might thereafter be so used as to practically destroy his own water privilege remaining, for he obviously contemplated that water sufficient to carry away the spent bark of the tannery would be drawn from the mill-pond, so that it might pass away through the old tail-race or the saw-mill, or through the new channel authorized to be dug, and thence onward down the stream. It appears that the land of the plaintiff extended down the creek (or tail-race) further than that granted to Hawver, or owned by the defendants, who came into the possession of the tannery in 1859, and who have since operated it. The evidence tended to show that when the defendants came into possession the waters from the plaintiff's saw-mill discharged through the old tail-race, a portion of which was unquestionably embraced within the land conveyed by the plaintiff to Hawver. The evidence also tends to show that, at one time, the defendants discharged the spent bark through a spout on their own land,

but that afterwards it was discharged into the tail-race of the saw-mill and the creek on the land of the plaintiff, by which the flow of waters was obstructed, and the plaintiff injured to a greater or less degree; and to recover the damages resulting from this alleged injury the action was brought.

There was evidence given on the trial tending to show that prior to or about the time of the conveyance of the plaintiff to Hawver, he (Hawver) had obtained from the owners of land on Fish creek, below the land of the plaintiff, the right to deposit all tan bark, from the tannery about to be erected by him, into said creek, and a release from them of all claim for damages which might result therefrom; and the case at the Circuit was made to turn upon the effect to be given by the jury to the evidence of this fact, and the knowledge of the plaintiff of its existence. The learned judge charged the jury, that if they found that the plaintiff had no notice before he executed the deed to Hawver, that it was the intention of Hawver to discharge any portion of his tan bark into the stream, and have it run off into the land below and lodge wherever it might chance to lodge, then they must find a verdict for the plaintiff; and if, on the contrary, they found, as a fact, that the plaintiff was aware, before he executed the deed, that it was intended to cast the spent bark into the stream, then he charged them, as a matter of law, that the plaintiff could not recover whether he supposed they were going to discharge a greater or less quantity than was, in fact, discharged. Under this direction the jury found for the defendants, and an exception was duly taken by the plaintiff.

In any view I have been able to take of this case, I think this ruling of the learned judge at the Circuit was erroneous. The case was made to turn solely upon the knowledge or want of knowledge by the plaintiff of the intention of Hawver as to the deposit of spent bark; and it is impossible to see how any intention of his, secret or expressed, could affect any rights of the plaintiff granted or not granted by the deed in question. Hawver was entitled to all the rights the deed

conveyed him, and no more, and any intention formed by him as to his future action would not tend to enlarge his legal rights to the use of the property conveyed, or restrict those of the plaintiff's in respect to the enjoyment of his own. As I understand the case, it appears that the consents and releases in question were of the owners of property on Fish creek, lying below the boundary of the plaintiff, and that the lower boundary of the plaintiff's land on the creek was somewhat below that of the defendants', and that the evidence tended to show that spent bark from the tannery lodged on the plaintiff's land, and tended to make back water on the race of the plaintiff's saw-mill. If it be assumed, as I think it must be, that the defendants, as the successors of Hawver, had acquired the right of the owners of land on Fish creek, below the land of the plaintiff, to poison the water of the creek, or obstruct its natural flow, by the deposit of tan bark, it does not by any means follow that it can, in any way, affect the legal rights of the plaintiff. He was entitled to the natural flow of the stream, unless he has, in that respect, granted the right to another, or lost it in some other way. It can scarcely be pretended that any agreement between Hawver and the owners below, without the consent of the plaintiff, would enable them to dam up the water of Fish creek, by the deposit of tan bark, or any other contrivance, so that it would flow back on the land of the plaintiff, and obstruct the operation of his saw-mill, and possibly destroy it, and this is precisely what has been done, and the plaintiff denied all redress for the injury in the Supreme Court. For this reason it appears to be plain that a new trial ought to be granted in this case, unless, for other reasons now to be considered, the ends of justice require that it should be refused.

It has been seen that the plaintiff failed to recover at the Circuit because the jury found that he knew, before he gave the deed of the tannery, that Hawver intended to deposit spent tan-bark in the stream, whether it be called the saw-mill race or Fish creek after the intersection, below the tannery. To this the plaintiff excepted, and from the judg-

ment entered on the finding of the jury, duly appealed to the General Term of the Supreme Court. The defendants, having succeeded at the Circuit, had no occasion to, and did not appeal, and hence the case was before the General Term on the plaintiff's exceptions and appeal alone ; and yet, that appellate tribunal, instead of considering the plaintiff's exceptions, or giving them any sort of notice, proceeded to consider a question not in any proper form raised by the defendants, on appeal or otherwise, and affirmed the judgment ordered at the Circuit, without considering the exceptions of the plaintiff upon which the appeal was taken, that gave the General Term any jurisdiction to make any decision in the case, either the one way or the other. For this error, also, I think a new trial should be granted. But it is said a case is presented by the record where it is so apparent that the plaintiff never can or ought to recover, that a new trial will be an idle ceremony, notwithstanding all the errors committed at the Circuit, and if it shall so appear it would be as well to affirm the judgment of the Supreme Court, even if it proceeded upon a principle and practice which we are not entirely able to approve.

In giving a construction to the deed from the plaintiff to Hawver, it is important " to consider the object of the grant, the situation of the premises, and the surrounding circumstances at the time the grant was made." (*French* v. *Carhart*, 1 N. Y., 96.) We also recognize the general rule that, "when a thing is granted all the means to attain it and all the fruits and effects of it are granted also, and shall pass inclusive, together with the thing, by the grant of the thing itself, without the words *cum pertinentis*, or any such like word." (Shep. Touch., 89.) In other words, the incident passes with the grant of the principal thing, unless restrained by some exception or reservation.

Considering the circumstances under which the grant of the plaintiff to Hawver was made, I think it fair to assume that the plaintiff did not, in fact, intend to grant a right or create a servitude which might be used by his grantee to the

SICKELS—VOL. XVI.        71

great injury, and perhaps work the absolute destruction of his saw-mill privilege, and such intention must be discovered in the deed, or elsewhere, before the view taken by the Supreme Court at General Term can be approved. I find nothing in the language of the deed, or in the surrounding circumstances, to warrant any such construction.

It appears, from the evidence, that for a long time previous to the grant to Hawver the water from the plaintiff's saw-mill was discharged through a mill-race that, some rods below, united with the waters of Fish creek, on the land of the plaintiff, and a portion of this mill-race was included in the description of the land in the deed to Hawver, but before the water from it reached Fish creek it again came wholly on the land of the plaintiff. There is evidence tending to show that in the earlier days of the operation of the tannery the spent bark from it was discharged in spouts on the land conveyed to Hawver, and afterwards thrown into the original mill-race, which it filled up, and then into a new channel on the land of the plaintiff, created by the action of the water, until it lodged in the mill-race, a new channel on the land of the plaintiff, before its water reached Mill creek, or on land of the plaintiff on Mill creek, so that the flow of the water was obstructed and set back upon the mill and machinery of the plaintiff, impeding the operation thereof, to his injury.

With the land conveyed to Hawver, the plaintiff granted " the privilege of digging a channel as wide and as deep as the present channel now is, along and adjoining the sixth course above mentioned (that is), from the large elm tree to a clump of maple trees, and turning the water from the mill-race therein." This was a privilege given to Hawver and his successors, to cut the new channel, to be used as a part of the mill-race, wholly on the land of the plaintiff; but the privilege thus granted was never acted on; and the only new channel cut, and which served as a mill-race, was produced by the action of the water drawn from the plaintiff's mill-pond.

It is undeniable, also, that the plaintiff, in the same deed, granted to Hawver the right to tap the plaintiff's mill-pond and to draw therefrom water enough, in addition to other specified uses, for "carrying away the spent bark" from the tannery; and I think it fair to assume that it was contemplated that the spent bark would be carried away by the action of the water, for it could not have been intended that this bark should be allowed to accumulate in the mill-race or in the creek, obstructing the flow of water and setting it back upon the plaintiff's mills and machinery. The grant, by its terms, gave the grantee the right to draw water from the plaintiff's dam; among other things, for the "carrying away the spent bark" of the tannery. The condition of this grant being fulfilled by the parties, no harm could come to the plaintiff's mill; and it is not perceived that, under it, the defendants can lodge bark in the stream and obstruct the flow of the waters to the detriment of the plaintiff. A grant to "carry away" the spent bark can scarcely be said to involve the right to lodge it on the land of the grantor and obstruct the natural flow of the stream of water.

The grantor made no agreement that the water from the dam would be sufficient, with the other uses, to carry off the spent bark, but this fact, if it existed, would not authorize the defendant to pile it up on the plaintiff's land to his injury; and this seems to have been done, for the defendants appear not to have employed water enough to enable them to properly exercise the right conferred by the deed. They had, by the grant, no right to obstruct the natural flow of the stream, and, having done so, the plaintiff was entitled to recover.

If it shall be suggested that, under the view of the case we have taken, Hawver or his grantees might draw all the water from the plaintiff's pond to carry away the spent bark of the tannery, it is sufficient to say that nothing of the kind has been done or attempted, and if it ever should be, another and a different question may arise. In times of high water it is provided that Hawver and his grantees may draw water

from the plaintiff's pond, but not in such quantities that it will "not run over the dam two inches deep," and this may tend to show that it never was the intention of the grantor to have, under any circumstances, the water drawn to any greater extent.

There must be a new trial.

All concur.

Judgment reversed.