LINUS P. MARSDEN, Appellant, *v.* THOMAS CORNELL et al.,
Respondents.

| 62 | 215 |
|----|-----|
| 126 | 192 |
| 62 | 215 |
| 136 | 325 |

A mortgage upon a canal boat filed in the office of the auditor of the canal department ceases to be a lien after the expiration of one year, as against a subsequent *bona fide* purchaser, unless within thirty days prior to the expiration of the year a true copy thereof, together with a statement exhibiting the interest of the mortgagee in the property, is filed. (§ 3, chap. 412, Laws of 1864.) A filing of a true copy alone will not suffice; nor can it be regarded as an original filing.

*Swift* v. *Hart* (12 Barb., 531) limited.

One who has unlawfully converted the mortgaged property and has acquired title by the payment of a judgment for the value of the property obtained against him by the mortgagor or his assignee because of the conversion, is not a *bona fide* purchaser within the meaning of the statute.

But where, prior to the recovery of such judgment, there has been a default in payment as required by the condition of the mortgage, and thereby the mortgagee has become the absolute owner subject only to the right of redemption, and has the right to immediate possession, so that he as well as the mortgagee, or his assigns, could have maintained an action for the conversion, satisfaction of a judgment for the full value in favor of the latter transfers to the judgment debtor the title of both, and an action to recover possession cannot be maintained against him by the mortgagee.

(Argued April 30, 1875; decided June 1, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendants entered upon the decision of the court upon trial without a jury. (Reported below, 2 Hun, 449; 5 T. & C., 27.)

This action was brought to recover possession of a canal boat.

Plaintiff claimed title by virtue of a chattel mortgage upon the boat executed by one Conly, the then owner, bearing date September 5th, 1870, given to secure the payment of certain promissory notes for the amounts and falling due, as stated in the mortgage, as follows: "$200 November 1st, 1870; $250 December 1st, 1870; $200 July 1st, 1871; $200 Sep-

tember 1st, 1871; $300 December 1st, 1871; $200 July 1st, 1872; $200 September 1st, 1872; $300 December 1st, 1872; $200 July 1st, 1873; $200 September 1st, 1873, and $150 December 1st, 1873."

A copy of the mortgage was filed in the office of the auditor of the canal department September 22d, 1870. A true copy was again filed September 20th, 1871, but no statement of the interest of the mortgagee was filed. A true copy with a proper statement was filed September 14th, 1872. The statement claimed that $1,250 and interest was due upon the mortgage. Conly sold and delivered possession of the boat to one Nelson, who brought an action against defendant Cornell for the conversion thereof. Defendant served an offer of judgment, under section 385 of the Code, which was accepted and judgment was entered thereon July 5th, 1872, which was paid and satisfied. On the 14th August, 1872, Cornell sold and delivered the boat to defendant Costello, who purchased without knowledge of the mortgage.

*Sanders & Baldwin* for the appellant. The filing of the mortgage in 1871, and the refiling with the statement, etc., in 1872, was all the statute required as against the defendants. (*Swift* v. *Hart*, 12 Barb., 531; *Newell* v. *Warner*, 44 id., 258, 265.) The mere facts of lawful possession in plaintiff and wrongful taking by defendants were sufficient to sustain an action for wrongful conversion. (7 Cow., 752; 9 id., 670; 35 Barb., 298; 11 Wend., 54, 57; 13 id., 63; 16 id., 571.) This is a possessory action merely, and the party entitled to possession may recover regardless of the title. (7 How., 251; 29 Barb., 518.)

*Benedict, Taft & Benedict* for the respondents. The omission of the statement of the mortgagee's interest in the mortgaged property rendered the refiling of the mortgage void. (*Fitch* v. *Humphrey*, 1 Den., 163; *Theriot* v. *Prince*, 1 Edw., 219; *Newell* v. *Warner*, 44 Barb., 258.) Defendants, while the default in refiling continued, became successively

subsequent purchasers in good faith, and as to them the mortgage was invalid. (Laws 1864, 993; Sedgw. on Dam., [m. p.] 495; 2 Kent's Com., 388, and note; *Thurst* v. *West*, 31 N. Y., 210; *Meech* v. *Patchin*, 14 id., 71; *Thompson* v. *Van Vechten*, 27 id., 568; *Dillingham* v. *Bolt*, 37 id., 198.) The mortgage was also invalid as against defendants, because never recorded in the proper office of the collector of customs. (1 Bright. Dig., 138, § 1; 139, 140, § 7; 824, § 3; *Van Santvoord* v. *The Boat J. B. Cole*, 4 N. Y. L. Obs., 373, 376; Benedict's Admiralty [2d ed.], 173; *Kelsey* v. *The Kate Tremain*, 5 Bene., cited and approved in 43 N. Y., 563; *Perkins* v. *Emerson*, 59 Me., 319; *Bell* v. *Bk. of London*, 3 H. & N. [Exch.], 730.)

FOLGER, J. The plaintiff brings this action to recover the possession of a canal boat. He bases his right of possession upon a mortgage upon the boat, made by the owner at the time. It was never filed in the town of the residence of the mortgagor. (Laws of 1833, p. 435.) Such a mortgage is absolutely void against a subsequent *bona fide* purchaser, unless it, or a true copy of it, is filed in the office of the auditor of the canal department. (Laws of 1864, chap. 412, p. 993, §§ 1, 2.) The mortgage was dated September 5th, 1870, and a copy of it was filed in the office of the auditor on the twenty-second of that month. This filing made it a valid instrument for one year from the day of the filing. (Id. and § 3.) After one year from that date had elapsed, it ceased to be valid against such purchaser, unless within thirty days next preceding the expiration of that year, a true copy of it should be again filed in the office of 'the auditor, together with a statement exhibiting the interest of the mortgagee in the property. (Id., § 3.) A true copy was again filed on the 20th September, 1871, in that office. There was not together with it the statement required by the act. (Id., § 3.) It did then, after the 22d of September, 1871, cease to be valid against the subsequent *bona fide* purchasers. Such is the plain language of the statute, and its policy is as plain as its

language.   The statute law of the State looks with great dis-
favor upon sales of chattel property, or incumbrances upon it,
unless there be an accompanying immediate delivery, and a
following actual and continued change of possession.   (2 R.
S., 136, § 5 ; Laws of 1833, chap. 279, p. 435 ; Laws of 1874,
*supra.*)  It permits a mortgage thereof to escape its repre-
hension, only on condition that it is, by filing in a public office,
exposed to public inquiry and view.   The plaintiff availed
himself of this condition to protect his mortgage, and for one
year he preserved the validity.   The statute law permits a
mortgage which has been thus preserved for one year, to be
saved for another for the amount unpaid upon it, by filing
again in the same office, with the exposure to public inquiry
and view by statement filed with it, of what continues after
the lapse of the first year, to be the interest of the mortgagee
in the property.   This the plaintiff neglected.   But he
claims that, by filing for the second year a true copy of the
mortgage only, he starts anew under . the first condition
prescribed by the statute law.   This is not so, for thereby
he thwarts the policy and express requirement of the law,
that he shall the second year, make known to all who
shall choose to inquire whether his interest in the prop-
erty has changed.   It is not now for us to say whether, if he
had omitted to file his mortgage in the year 1870, a filing of a
true copy in 1871, or in 1872, would have been a compliance
with the statute, and would have saved its validity.   But he
chose in 1870 to avail himself of the provision of the statute
which for one year kept his mortgage good for him.   He
thus brought it under the purview and operation of the stat-
ute — within its grasp, so to speak.   It then became as if the
statute was passed for it alone, and applied to it alone, of all
the chattel mortgages in the State.   Then, the third section
of the statute of 1864 said of it, as if of it alone : This mort-
gage shall cease to be valid as against subsequent purchasers
in good faith, after the expiration of one year from the 22d
September, 1870, unless within thirty days next preceding
that expiration the plaintiff shall file it again, and unless he

shall file therewith a statement of his interest in the property. This he did not, and lost the benefit of his security, if any *bona fide* purchaser came in. *Fitch* v. *Humphrey* (1 Denio, 163) is an authority clearly in point, that the statement is an essential demand of the statute, and that nothing but a statement will answer that demand. The policy of the statute is, to make known to all interested, the state of the property and the incumbrances upon it from year to year. (*Meech* v. *Patchin*, 14 N. Y., 71.) The mortgage, when filed the first year, must state correctly the amount for which it is a security. If it does not it is a badge of fraud. (*Frost* v. *Warren*, 42 N. Y., 204.) So, the second year, it must be accompanied with a statement of just the amount still unpaid, so that it may appear what has been paid, if any thing, or whether the debt has increased by the interest upon it. It is a fraud (or at least a badge of fraud), if this be not stated truly. (*Ely* v. *Carnley*, 19 N. Y., 496.) It is a violation of the statute if it be not stated at all, which is not cured by the reiteration of the original statement of amount, by a refiling of barely the original mortgage. The appellant cites *Swift* v. *Hart* (12 Barb., 531), which, so far as it is relied upon by him, is not in harmony with the views here expressed. But that case, so far as it conflicts, is not approved by this court. (And see *Porter* v. *Parmley*, 52 N. Y., 188.) Our conclusion is that the mortgage of the plaintiff had, after the 22d September, 1871, ceased to be valid against subsequent purchasers in good faith.

It is difficult, however, to reach the conclusion that Cornell was, within the meaning of the acts cited, a subsequent purchaser in good faith. Nelson bought the boat of the mortgagor, who was the owner of it; but Nelson bought with knowledge of the mortgage and expressly subject thereto. This, to be sure, did not prevent him from giving to a purchaser from him, ignorant of the existence of the mortgage, who should pay a valuable consideration for the boat, a title which would be free from the operation of the mortgage (*Dillingham* v. *Bolt*, 37 N. Y., 198), it not having

been refiled as required. But was Cornell such a purchaser? He acquired his possession of the boat by a conversion of it. He got his ownership of it by the action in trover brought against him by Nelson for that conversion; by the judgment in that action, and by the payment of that judgment, by the return satisfied of the execution thereon. For where in an action of trespass for the taking away of personal property, or replevin therefor with an *adhuc detinet*, or trover for the conversion thereof, the owner has judgment for the value of the goods which is paid, and the goods remain in the possession of the defendant, the title in the property is changed, and the wrong-doer becomes the owner. (*Bishop* v. *Viscountess Montague*, Cro. Eliz., 824; *Adams* v. *Boughton*, Andr., 18; *Cooper* v. *Shepherd*, 3 C. B., 266; *Curtis* v. *Groat*, 6 J. R., 168; *Osterhout* v. *Roberts*, 8 Cow., 43; *Brinsmade* v. *Harrison*, L. R. [6 C. P.], 584.) Thus did Cornell take the title of Nelson to the boat; but it was against his will, on compulsion. There are phrases in the books which seem to assert, that one thus acquiring a title to personal property is a purchaser. If one recovers damages of a trespasser for taking his goods, the law gives him the property of the goods, "because he hath paid for them." (Shep. Touch., "*Gift;*" *solutio pretii, emptionis loco habetur*, is the maxim quoted; 4 Jenk. Cent., 189, case 88.) It is as *a sale of the thing* to the defendant, which vests the property in him. (*Smith* v. *Gibson*, Cases *temp.* Hardwicke, 319.) The damages recovered for the goods are the price thereof. (*Adams* v. *Boughton, supra;* see also *Cooper* v. *Shepherd, supra*.) So in Benjamin on Sales (page 41), it is said: "There is also one special case, in which *a sale takes place* by the operation of certain principles of law rather than the mutual assent of the parties either express or implied," meaning by the effect of the actions at law above spoken of. And a purchaser, it is laid down, is he who obtains the title to property in any way other than by descent. (3 Tomlins' Law Dict., 259.) Doubtless the effect of the action of trover for chattels, pursued to judgment for the full value thereof, and satisfaction of the judg-

ment got, is to transfer to the defendant the title in the goods which the plaintiff had, and it may be that the defendant in such case pays the price of the chattels, and is technically a purchaser. But I am not able to conclude therefrom, that he is such a purchaser, as is meant in the provisions of the statutes, requiring the filing, and refiling with statement, of chattel mortgages. I think that they mean one who becomes the buyer of goods by contract, by the mutual assent of the parties, express or implied; who of his own desire negotiates for them, and pays a price agreed upon, and receives a transfer of them, from one who of his own will sells and delivers them; and that they do not mean a wrong-doer upon the property, who against his will is cast in judgment for the value of it, and takes title unwillingly by operation of law, upon payment of the judgment. The policy and intent of the enactments were, to protect creditors and honest dealers with the property, against hidden or unknown liens; they had no thought of guarding wrong-doers. The revisers and the legislature, in enacting the Revised Statutes and the acts of 1833, 1858 (Laws of 1858, chap. 247), and 1864, used the word purchasers less in its technical, and more in its commercial and vernacular sense. (See Revisers' notes, 5 Edm. St., 396.) So that I am unable to hold, that Cornell can avail himself of the provisions of those enactments, to avoid the lien of the plaintiff's mortgage.

But there is another principle to be considered. The mere possession in one of personal property, with a special right in it, while the general ownership and right of possession is in another, will maintain an action of trover by the one, for the conversion of it; so that a bailor and a bailee, a shipper and carrier, or other like persons, one having a general, and the other a special property in chattels, may either of them maintain that action. (*Dillenback* v. *Jerome*, 7 Cow., 294.) The bailee, or person having the special property, is entitled, against a stranger, to recover in such action the entire value of the goods. (*Armory* v. *Delamine*, 1 Stra., 505; *Brierly* v. *Kendall*, 17 Ad. & Ell. [N. S.], 937.) After

satisfying his own lien, or right of charge upon the goods out of the avails, he is a trustee of the general owner for the surplus. It follows from this, that if the special-property-man sues first and recovers, a recovery by him is a bar to an action by the general owner. (See *Smith* v. *James*, 7 Cow., 328; *Wilbraham* v. *Snow*, 2 Saund. [Williams], 47, *e*.) And it further follows, that when the bailee or special-property-man has obtained satisfaction, for his judgment got for the whole value, that thereby the whole title to the property is transferred to the defendant, not only that which the plaintiff had, but also that which the bailor, or general owner, had; so that the wrong-doer who has converted the property, by the payment of one judgment recovering the full value thereof, becomes both the general owner and special owner, then joining and having, both the possession and the right of property; though there is a *dictum* to the contrary in *Barb* v. *Fish* (8 Black., 481–486).

Applying these principles to the facts of this case, what is the result? It is plain that it would be a hard measure of justice to Cornell, though he stands before the court as a wrong-doer, that he should pay to Nelson, as the possessor of the boat, the full value of it, (for we must assume that the judgment of Nelson was for the full value), in satisfaction of one judgment, and to this plaintiff, as mortgagee of the boat, nearly as much more, as the value of his lien, in satisfaction of another judgment for the same tort. And how may he escape this? He could not, in the action of Nelson against him, set up, either in bar or mitigation of damages, the existence of the plaintiff's lien upon the boat. A defendant in trover may not set up title in a third person for such purpose, unless he connects himself with that title (*Finch* v. *Blount*, 7 C. & P., 478; *Duncan* v. *Spear*, 11 Wend., 54; *Earl* v. *Camp*, 16 id., 562); so that in the action against him by Nelson, he was unable to avail himself of the existence of the mortgage, had he known of it. But it does not seem that the law will put even a wrong-doer in such predicament, as that he will be twice mulcted in civil action

for the same act. I think that an application of the principles above stated, may fairly be made to the case. Looking at the facts, we find that the mortgage was conditioned for the payment of $2,400 and interest, in installments. By the statement of the plaintiff, filed in the auditor's office, September 14, 1872, he claims that there was unpaid upon the mortgage, at that date, $1,250 and interest thereon, from the date of the mortgage. To make up that sum, there must have been unpaid the installment payable July 1, 1872. It thus appears, that a default in the performance of the condition of the mortgage had occurred before the recovery of the judgment by Nelson against Cornell for the conversion. The effect of that default was, that Marsden, the plaintiff, had become the absolute owner of the boat, subject only to the right of redemption in the mortgagee or his assignees, and had the right to take immediate possession of the boat. (*Lewis* v. *Palmer*, 28 N. Y., 271 ; *Hall* v. *Sampson*, 34 id., 274.) Marsden was thus, at the time of the recovery by Nelson, the general owner, with the right of immediate possession. Nelson was thus, the person who been deprived by Cornell of actual possession, and was as one who had the special property in the boat, and could and did maintain his action of trover. Marsden having the legal title, the general ownership, with the right of possession, could, at that time, have maintained trover for a conversion of the boat. (*Mattison* v. *Baucus*, 1 N. Y., 295; *Butler* v. *Miller*, id., 497; *Coles* v. *Clark*, 3 Cush., 399.) Thus either of them could maintain an action for a conversion of the chattel; whichever of them first recovered would recover the full value of it; a recovery thereof by either barred a recovery by the other; satisfaction of the judgment transferred the title of both to the judgment debtor, who thereupon held the property against the whole world ; and the one who recovered was accountable to the other for the avails, according to their equitable rights. Thus, by the operation of these principles, Cornell acquired a title to the boat, which he can maintain against the plaintiff.

The case is still stronger for the defendant Costello. He had all the title which Cornell could give him, which was certainly all that Nelson had. Costello is in the same position, then, as if he had taken title from Nelson. He is, besides that, a purchaser, a subsequent purchaser within the purview of the statutes, for he bought in good faith, and paid a valuable consideration; as to him, the mortgage of the plaintiff had ceased to be valid.

The other question raised in the case it needs not that we consider.

The judgment should be affirmed.

All concur.

Judgment affirmed.