### KIMBALL *v.* FARMERS' & MECHANICS' BANK.

*(Superior Court of Buffalo, General Term.* November 8, 1890.)

MARITIME LIENS—MORTGAGES—PRIORITIES—RIGHT TO FREIGHT.

Plaintiff, holding a first mortgage, duly recorded, on a schooner, took possession for the purpose of foreclosure, but afterwards surrendered it to the mortgagor for ·

two specified trips, the earnings of the vessel for those trips to be plaintiff's, and he took from the mortgagor an assignment of such earnings. *Held,* that such surrender of possession did not entitle the mortgagor to receive the earnings, and the assignment gave plaintiff no additional right; and the holder of a second mortgage, although prior to the assignment of earnings, acquired no right to the earnings, as against plaintiff, by seizing the vessel on foreclosure of the second mortgage before the completion of such trips.

Appeal from judgment on report of referee.

Action by Louis M. Kimball against the Farmers' & Mechanics' Bank of Buffalo. The evidence is not returned, and the conceded facts appear in the referee's findings of fact. From them it appears that Sarah E. Nims, on April 16, 1873, was indebted to plaintiff, upon a promissory note, in the sum of $8,000, payable, with interest, 90 days from its date. That said Nims was the owner of a schooner named George D. Russell. For the purpose of securing the payment of said note and interest, said Nims executed and delivered a mortgage upon said vessel, which was duly recorded. In and by its terms, said mortgage provided that in case default was made in the payment of said note, or if plaintiff should at any time deem himself in danger of losing said debt, or any part thereof, said plaintiff was authorized to take possession of said schooner, her tackle, etc., and sell and convey the said property, or so much thereof as would satisfy said debt, after giving notice of said sale by publication in a newspaper. That on October 27, 1873, said Nims, for the purpose of securing the payment of seven promissory notes made by said Nims, amounting in the aggregate to $20,000, the last of which fell due December 1, 1874, executed and delivered to defendant a mortgage upon said schooner, which contained a like clause as was contained in plaintiff's mortgage, as herein stated, and caused the same to be duly recorded. When plaintiff's note fell due, it was not paid, and plaintiff, on November 5, 1875, took possession of said schooner, for the purpose of foreclosing his said mortgage. While plaintiff was so in possession of said schooner on said last-named date, said Nims executed and delivered to plaintiff an assignment of the net earnings of said schooner, exclusive of towage charges, which she might earn upon two round trips to Chicago and return. That, in consideration of said assignment, plaintiff released and surrendered said schooner, and returned her to the posssesion of said Nims. That thereupon said schooner proceeded on her voyage to Chicago; from thence to Milwaukee, where she took on board a cargo of wheat consigned to W. H. Powers & Co., at Buffalo. After being loaded, said schooner was frozen in at Milwaukee, and was unable to leave said port until the spring of 1876. While so frozen in, said schooner was seized, under a writ of attachment, issued from the circuit court of the state of Wisconsin, in proceedings commenced by the Ætna Insurance Company against said Nims and Ozias Nims, her husband. The latter notified defendant of said proceeding, and subsequently defendant caused to be commenced, in the courts of Wisconsin, replevin proceedings; took said schooner from the possession of the sheriff, and retained the same, under and by virtue of its mortgage; caused said schooner to be towed to Buffalo, where she arrived about May 15, 1876; and procured from said Sarah E. Nims an order for the freight moneys, collected the same, and applied them upon its mortgage debt. Defendant had no knowledge of the existence of the assignment of the earnings of the schooner to plaintiff until after the completion of her voyage from Milwaukee. That thereafter plaintiff demanded of defendant the freight moneys, and, upon refusal to pay them over, brought this action. While said schooner was frozen in, some repairs were made upon her, which, with the charges incident to her voyage to Buffalo, amounted to the aggregate sum of $500. The referee decided, as a matter of law, that defendant became legally entitled to collect and receive said freight moneys, and apply the same in reduction of its said mortgage debt; that plaintiff was not entitled to maintain the action; and directed judgment dismissing plaintiff's complaint, with costs.

To the conclusions of law found by the referee, plaintiff filed exceptions. These exceptions present the question now here.

Argued before BECKWITH, C. J., and TITUS and HATCH, JJ.

*Sherman S. Rogers,* for appellant.  *Spencer Clinton,* for appellee.

HATCH, J.   When default was made in the payment of the note held by plaintiff, the legal title to the vessel became vested in plaintiff, subject to be defeated only upon compliance with the conditions of the mortgage. *Marsden* v. *Cornell,* 62 N. Y. 215; *Campbell* v. *Birch,* 60 N. Y. 218.   At the time defendant took its mortgage from Sarah E. Nims, she was then in default. The legal title was vested in plaintiff.   All the interest she then had or could mortgage was an equity of redemption in the property.   Of this fact defendant had notice, as plaintiff's mortgage was duly recorded, and by its terms informed defendant when the debt became due and payable.   As to the vessel, defendant possessed no property therein, as against plaintiff; could enforce no right which was not subject to the payment of plaintiff's claim.   The present question, however, relates not to the vessel but to her earnings. Ordinarily earnings are an incident of ownership and follow the title.   Macl. Shipp. p. 99, and cases cited.   In the case of a mortgagee of a ship out of possession, the mortgagor becomes entitled to receive the freight moneys; may collect the same, and use them for his own benefit.   This right in the mortgagor, however, may be intercepted by the mortgagee's taking possession of the vessel at any time before the delivery of the cargo, in which event the latter becomes entitled to all the earnings of the voyage, subject to such expenses as are legally chargeable thereon.   *Marine Credit Co.* v. *Wilson,* L. R. 7 Ch. 507; *Cato* v. *Irving,* 5 De Gex & S. 210; *The Wexford,* 7 Fed. Rep. 681, 682.   The holder of a second mortgage occupies a different position. As stated by Sir W. M. JAMES in *Marine Credit Co.* v. *Wilson, supra:* "What is the position of a second mortgagee of a ship with respect to the freight? He has no legal right to take actual possession, and cannot, therefore, by his own act, give himself that which is equivalent to possession.   But, as between himself and the mortgagor, the equitable right of the second mortgagee is the same as the legal right of the first mortgagee.   *   *   *   But this is to be understood only as between the second mortgagee and the mortgagor. *   *   *   The respective positions of the first and second mortgagees are essentially different, arising from the essential difference between a legal and an equitable title.   The legal owner's right is paramount to every equitable charge not affecting his own conscience; the equitable owner, in the absence of special circumstances, takes subject to all equities prior in date to his own estate or charge."   Upon these principles, counsel for the respective parties reach divergent conclusions, it being claimed, upon the part of plaintiff, that the mortgagee had taken possession of the vessel, had made but a conditional release, and, under the circumstances attendant thereon, he became legally and equitably entitled to the moneys earned; that defendant could not by any act, based upon its mortgage, obtain a superior title to said moneys.   Upon the part of defendant, it is contended that, when plaintiff released the possession of said vessel to the mortgagor, he placed the latter in the same position as though he had never seized, and thereafter relied upon the security of the assignment, taken in consideration of the release, that the assignment was inferior as a lien to its mortgage, as the latter was prior in point of time; and, being possessed of the right to seize and take possession of the vessel by virtue of the mortgage, it exercised such right, completed the voyage, delivered the cargo, received the earnings, and, as plaintiff did not exercise its right of seizure during this time, defendant took title to the earnings.

There is no question but that plaintiff on November, 1875, seized and took into his possession the vessel.   At this time the legal title was vested absolutely in him.   He could tie her up, sell or navigate her as he chose, and no

person could complain or compel him to do other or different, except he pay the debt and charges legally due. Under these circumstances, Mrs. Nims applied for leave to run the vessel two round trips between Chicago and Buffalo. At this time she had no legal rights in the vessel, and she acquired none by virtue of any subsequent acts. Plaintiff, in consenting to this arrangement, imposed a condition that the earnings of the vessel for the trips should be his. He let her go to enable her to earn for his benefit. The surrender was not only conditional, but limited; it was conditioned upon the payment of freight, and limited in that it provided for only two round trips, when, under a fair interpretation of the arrangement, the vessel was to be returned to the actual possession of plaintiff. When plaintiff released the vessel, he surrendered no part of his legal title, nor did he surrender possession beyond such as was necessary for her navigation in order to earn for his benefit. This involved all the vessel could do, and it was not such a release from his control over the vessel as would have enabled the mortgagor to receive for his own benefit the freight money, had there been no assignment. The assignment neither detracted from plaintiff's rights, nor did it add to those of the mortgagor. Plaintiff was not bound by the assignment of the freights, for he could at any time have secured them by taking possession, and he could have prevented the voyage. As the assignment gave him no additional right to what he already possessed, consequently there was no consideration for it. The mortgagor's possession was for a special and particular purpose. In carrying out that purpose he represented the plaintiff. At this time the debts secured by the two mortgages were due. Plaintiff had the legal title; defendant simply had an equitable right or interest. If the right of defendant to seize be conceded, its equitable right to enforce the claim upon which it founded the right to seize could, in the nature of things, only be against such rights as the mortgagor possessed therein at the time of seizure; and, as against plaintiff, she possessed no right to the freight moneys, either legal or equitable. By the seizure, defendant did not acquire any greater right than it already possessed against the mortgagor, as it could acquire no greater right than she at the time had. Within the authority heretofore cited, the seizure, therefore, gave defendant no additional rights to the moneys. It is suggested, however, that the finding of the referee is to the effect that there was an absolute surrender of the vessel by plaintiff to Nims, in consequence of which the inference is not authorized that plaintiff had any control over her by virtue of his mortgage. I am not inclined to adopt this view. On the contrary, I am of the opinion that the fourth and fifth findings of fact are to be construed together, that the execution of the assignment is to be taken in connection with plaintiff's legal rights under the mortgage, and as so construed the surrender was upon the condition that the freights were to be paid to plaintiff. As this was the sole object of the voyage, it would seem to authorize the inference that Nims' possession, being for the exclusive benefit of plaintiff, was constructively the latter's possession. This view proceeds upon the theory that the rights obtained by virtue of the assignment executed at the time of the release are outside of the questions involved. It consequently disposes of defendant's claim that its mortgage, being prior in date to the assignment, therefore possessed a superior lien. It is conceded that the expenses paid by defendant are a proper charge upon the moneys received. If these views are correct, it follows that the judgment rendered is wrong. It is therefore reversed, and a new trial ordered before another referee, costs to abide event. All concur.