STATE BANK OF SYRACUSE v. LIGHTHALL et al.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1899.)

1. MORTGAGES—CONSTRUCTION—EVIDENCE.
　　　Evidence of the situation and relation of the parties at the time of the
　　execution of a mortgage, and of the circumstances surrounding its execu-
　　tion, is admissible to determine the intention and meaning of the terms
　　and conditions thereof.

2. SAME—RECITALS.
　　　Recitals in a mortgage executed by defendants to plaintiff that one of
　　the defendants had agreed to pay $5,000 into plaintiff bank, to the credit
　　of a certain company, on or before a certain day, and that said mortgage
　　was intended as security for, and to be void upon, such payment, but in
　　case of default the plaintiff to have the right to sell the premises in the
　　manner prescribed by law, and out of the proceeds to retain the amount
　　agreed to be placed to the credit of such company, are equivalent to a stip-
　　ulation that such defendants should pay said sum into plaintiff bank, and
　　that, when said bank so received it, credit therefor should be given to the
　　company, and that until such payment the mortgage should stand as a
　　security to plaintiff therefor.

3. SAME.

The mortgage from defendants to plaintiff bank contained recitals to the effect that one of the defendants had agreed to pay $5,000 to plaintiff, to the credit of a certain company, on or before June 1, 1896, and that said mortgage was intended as security for, and to be void upon, the payment of such sum, but in case of default plaintiff to have the right to sell the premises in the manner prescribed by law, and out of the proceeds to retain the amount to be placed to the credit of such company. The affairs of the company, which had borrowed large sums from plaintiff on accommodation paper, and induced plaintiff to carry a large amount of its customers' paper, having become somewhat impaired, plaintiff's officers became anxious as to their security; and negotiations were had between the plaintiff and one of the defendants, who was president of the company, which resulted in the giving of the mortgage referred to, for the purpose, as the plaintiff testified, of reducing the indebtedness of the company to plaintiff, and, as defendants testified, "simply as collateral security, and not to be recorded until such time as the officers of plaintiff thought necessary." *Held*, that the language used in the mortgage, in the light of the situation and relation of the parties at the time it was executed, justified a finding that the true intent, as understood by the parties, was that said sum of $5,000 should be paid to plaintiff to the credit of the company, and that plaintiff would thereupon be entitled to apply said moneys towards the payment of its claims against the company.

Appeal from special term, Onondaga county.

Action by the State Bank of Syracuse against John A. Lighthall and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Plaintiff brings this action to foreclose a mortgage bearing date the 26th day of February, 1896, recorded in the Onondaga county clerk's office on the 18th day of December, 1896, in Book 326 of Mortgages, at page 285. An answer was served by John A. Lighthall, William S. Lighthall, Frederick S. Lighthall, and Zayde E. Lighthall, in which they admit that on or about the 26th of February, 1896, "they executed, acknowledged, and delivered to the plaintiff a mortgage whereby they granted to the plaintiff the premises described in the complaint, containing the conditions therein specified. * * * They deny that the said mortgage was executed for the purpose of securing to the plaintiff the sum of $5,000, or any other sum whatever." They allege that the mortgage has been fully paid by the said defendants, and that all the conditions therein contained have been, prior to the commencement of this action, fully kept and performed by them. "They allege that the said mortgage was executed without consideration on the part of the defendants, or either of them, to the knowledge of the plaintiff." Their answer contains some other allegations. The issues framed by such answer were referred to a referee, who passed upon the issues favorably to the plaintiff; and he found as conclusions of law: "First, that there was due and unpaid on said mortgage at the time of the commencement of this action the sum of $5,000. with interest thereon from June 1, 1896; second, that the plaintiff is entitled to the usual judgment of foreclosure of said mortgage and the sale of said mortgaged premises, the proceeds of such sale to be applied towards the payment of the debt of the Farmers' Fertilizer Company to plaintiff." The appellants served and filed several exceptions to the referee's findings of fact, and to his conclusions of law.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

W. S. Andrews, for appellants.
Frank Hiscock, for respondent.

HARDIN, P. J. Plaintiff's complaint alleges that it received the mortgage mentioned in the complaint. The mortgage bears date

the 26th day of February, 1896. It was acknowledged by Frederick S. Lighthall and Zayde E. Lighthall on the 28th day of February in the state of New Jersey; and on the 2d day of March, 1896, it was acknowledged by John A. Lighthall and William S. Lighthall before a commissioner of deeds in the city of Syracuse. The following words are found in the first part of the mortgage, to wit:

"This indenture, made this twenty-sixth day of February, in the year of our Lord one thousand eight hundred and ninety-six, between John A. Lighthall, John A. Lighthall, Jr., Zayde E. T. Lighthall, Frederick S. Lighthall, William S. Lighthall, and John A. Lighthall as trustee for John A. Lighthall, Jr., Zayde E. T. Lighthall, Frederick S. Lighthall, and William S. Lighthall, of Syracuse, N. Y., parties of the first part, and State Bank of Syracuse, a body corporate, party of the second part, witnesseth, that the said parties of the first part, in consideration of the sum of one dollar, have sold, and by these presents do grant and convey, to the said party of the second part, its successors and assigns, all that tract or parcel of land situate in the city of Syracuse, N. Y."

Then follows a description of the premises as stated in the complaint. Following the description is found the following language:

"The said John A. Lighthall, one of the parties of the first part, having agreed to pay into the State Bank of Syracuse, the party of the second part, to the credit of the Farmers' Fertilizer Company, the sum of five thousand dollars, on or before the first day of June, 1896, this grant is intended as security for the payment of the sum of five thousand dollars by said John A. Lighthall at the time and in the manner aforesaid. And this conveyance shall be void if such payment be made as herein specified. And in case default shall be made in the payment of the said sum, or any part of said sum, as above provided, it shall be lawful for the party of the second part, its successors or assigns, at any time thereafter to sell the premises hereby granted, or any part thereof, in the manner prescribed by law, and out of all the moneys arising from such sale to retain the said amount, which is to be placed to the credit of the Farmers' Fertilizer Company in the State Bank of Syracuse whenever received, together with the costs and charges of making such sale; and the overplus, if any there be, shall be paid by the party making such sale, on demand, to the said John A. Lighthall, as trustee as aforesaid, his successors or assigns."

Upon the trial considerable evidence was received tending to elucidate the situation of the respective parties and their relations to each other at the time the mortgage was delivered to the plaintiff. From that evidence it appeared that the plaintiff is a domestic corporation doing business at Syracuse as a bank of discount. It also appeared that the Farmers' Fertilizer Company was a domestic corporation organized and doing business at Syracuse, and prior to the date of the said mortgage, and subsequent thereto, it was a large customer of the bank, transacting, apparently, all its banking business with the plaintiff. In the course of that business the Farmers' Fertilizer Company had become a borrower of some $17,-000 on accommodation paper, and had induced the bank to carry some $33,000 of customers' paper, which two clauses of paper the bank held at the time the mortgage was executed. The affairs of the Farmers' Fertilizer Company had become somewhat impaired, and its business extended, and its credit somewhat questioned by the bank; and several interviews were had antecedent to the execution of the mortgage between the officers of the bank and the officers of the Farmers' Fertilizer Company with respect to the re-

lations of the two corporations to each other. In speaking of such interviews, Mr. Hendricks testifies:

"There was some anxiety at that time among the officers of the bank in relation to the security that we had, which led to some negotiations with them in relation to other securities. Mr. John A. Lighthall finally agreed to give us this mortgage, with the understanding that it should be paid to reduce their indebtedness that much."

John A. Lighthall, who was called as a witness for the defendants, and who was president of the Farmers' Fertilizer Company, testifies that he had an interview in regard to the mortgage, and that he volunteered to give the mortgage on the house where he resided; and, in speaking of one of his interviews with the bank or its officers, he testifies:

"My impression is that it was with Mr. Chase, the cashier. I drew up that mortgage with the understanding * * * that it should not go on record until such time as the officers of the bank thought it necessary. The mortgage was accepted by Mr. Chase and put away as collateral security."

Further evidence was given tending to elucidate the real relations between the parties at the time the mortgage was actually delivered. When the evidence which we have quoted, and the other evidence to which we have referred, was received, the referee expressly held that it was not received for the purpose of contradicting or varying the terms of the mortgage, and held that it was competent, with a view of elucidating the language used in the mortgage, and to aid in ascertaining the intention of the parties to the mortgage in delivering the same to the plaintiff. For such purpose we think the evidence was competent.

In French v. Carhart, 1 N. Y. 96, it was held that in the construction of instruments—

"The intention of the parties is to govern, and, where the language used is susceptible of more than one interpretation, courts will look at the surrounding circumstances existing when the contract is entered into, such as the situation of the parties and of the subject-matter of the contract."

In Field v. Munson, 47 N. Y. 221, it was held, viz.:

"Where a contract, as evidenced by the writings between the parties, is not entirely intelligible, evidence of the situation and relation of the parties towards each other, and of the circumstances attending the negotiation, is competent, as aids in the interpretation of the written instrument."

In Kenyon v. Association, 122 N. Y. 258, 25 N. E. 299, Bradley, J., said:

"But inasmuch as the words, taken together, of his statement upon the subject expressed in the application, are in their import somewhat equivocal, reference may be had to the light furnished by the surrounding circumstances, with a view to ascertain the sense in which they were used, so far as it may be applicable to them, and in aid of their interpretation."

In Farr v. Nichols, 132 N. Y. 327, 30 N. E. 834, which was an action to foreclose a mortgage, it was held:

"That, as between the parties, it was proper to show the circumstances, to aid in ascertaining the intent of the parties; and, viewed in their light, the intent appeared to be to cover future as well as existing indorsements."

In Emmett v. Penoyer, 151 N. Y. 567, 45 N. E. 1042, O'Brien, J., said:

"Where the paper appears to be incomplete in any respect, or where words or phrases used, in their application to the agreement of which they form a part, are ambiguous or unintelligible, parol proof is admissible to supply the incomplete term, to aid in the interpretation, and to explain what is obscure or doubtful."

In the sixth finding of fact the referee says:

"Parol evidence was admitted and received upon the trial of this action for the purpose of determining whether or not the conditions of said mortgage had been complied with, and also for the purpose of determining the intent and meaning of the terms and conditions expressed therein, and was not admissible and is not considered for the purpose of in any way varying the terms and conditions thereof."

We think the finding indicates a proper rule, and that the appellants are not entitled to disturb the referee's report by reason of the application of that rule in the progress of the hearing before the referee. The language found in the mortgage is equivalent to a stipulation that John A. Lighthall should pay into the State Bank of Syracuse the sum of $5,000, and that, when the bank so received it, it should give credit therefor to the Farmers' Fertilizer Company, and that until such payment should be made by him the mortgage should stand as a security to the bank for the sum of $5,000 so to be paid by John A. Lighthall on or before the 1st of June, 1896. And it evidently was the intent of the parties that, when said $5,000 was paid, it should be applied on the indebtedness held by the plaintiff against the Farmers' Fertilizer Company. The evidence warranted the referee in finding that John A. Lighthall failed to comply with the conditions of the mortgage, and that he had omitted to pay to the plaintiff, to the credit of the Farmers' Fertilizer Company, the sum of $5,000. The evidence fully sustains the finding of the referee that in January, 1896, the Farmers' Fertilizer Company was indebted to the plaintiff in about the sum of $37,000. The payment on January 6, 1896, by Frederick S. Lighthall of $5,000 to his father, John A. Lighthall, for 600 shares of the stock of the Farmers' Fertilizer Company, was antecedent to the execution of the mortgage, and has no connection with the money mentioned in the mortgage. Considering the language used in the mortgage in the light of the situation of the parties at the time it was executed, and the circumstances that aid in its interpretation, we are of the opinion that the learned referee correctly found, viz.:

"That the true intent and meaning of the language used and employed in said mortgage, as understood by the parties at the time of its execution, was that the sum of $5,000 secured by said mortgage should be paid to the plaintiff to the credit of the Farmers' Fertilizer Company, and that plaintiff would thereupon be entitled to apply said moneys so deposited by said John A. Lighthall towards the payment and reduction of its claims and demands against said Farmers' Fertilizer Company."

We think the evidence warranted the finding by the referee that the several sums of money deposited to the credit of the Farmers' Fertilizer Company with the plaintiff, and used by the Farmers' Fertilizer Company in the discharge of its pressing needs, had no

reference to the sum stipulated for in the mortgage, and that the referee was warranted in his general conclusion, upon the facts, that the mortgage had never been paid, or its terms complied with, and that the same was a valid security in the hands of the plaintiff, and that the plaintiff was authorized to have the same foreclosed by a sale of the mortgaged premises, and the proceeds of such sale "applied towards the payment of the debt of the Farmers' Fertilizer Company to the plaintiff." The foregoing views lead to the conclusion that the report of the referee should be sustained, and the judgment entered thereon should be affirmed.

Judgment affirmed, with costs. All concur.